**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CENTER FOR INDEPENDENT LIVING, | : | |
| OF NORTH CENTRAL PENNSYLVANIA, | : | |
| incorporated as CILNCP, Inc.; | : | |
| | : | |
| ADAPT, NORTH CENTRAL PENNSYLVANIA; | : | |
| | : | Civil Action No. 02-6000 |
| THOMAS GRIECO; | : | |
| | : | |
| TIMA CUMMINGS; | : | |
| | : | |
| JAY HARPER; | : | |
| | : | |
| MARIE PRINCE, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| CITY OF WILLIAMSPORT, | : | |
| | : | |
| Defendant. | : | |

---

# COMPLAINT

---

**Jury Trial Demanded as to Damages**

DAVID FERLEGER, ESQUIRE
413 Johnson Street
Jenkintown, PA 19046
 (215) 887-01234
*david@ferleger.com*

THOMAS H. EARLE, ESQUIRE
112 N. 8th Street, Suite 600
Philadelphia, PA 19107
215-620-3347
*thomasearle@libertyresources.org*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CENTER FOR INDEPENDENT LIVING, :
OF NORTH CENTRAL PENNSYLVANIA, :
incorporated as CILNCP, Inc.; :
:
ADAPT, NORTH CENTRAL PENNSYLVANIA :
:     Civil Action No. 02-6000
THOMAS GRIECO; :
:
TIMA CUMMINGS; :
:
JAY HARNER; :
:
MARIE PRINCE, :
:
             Plaintiffs, :
    v. :
:
CITY OF WILLIAMSPORT, :
:
             Defendant. :

## OVERVIEW

1. 30 years ago, the United States Congress enacted, and President George H.W. Bush signed on July 26, 1990, the Americans with Disabilities Act ("ADA"). Title II of the ADA requires local governments, such as Defendant City of Williamsport to ensure that its services, programs and facilities, do not discriminate and, among other things, are accessible to individuals with mobility disabilities and to the blind. Section 504 of the Rehabilitation Act of 1973 ("Section 504"), which prohibits discrimination against people with disabilities by any entity receiving federal assistance, became law decades earlier.

2. The CITY OF WILLIAMSPORT for decades has knowingly disregarded its obligations under federal accessibility laws requiring access to a safe, unencumbered path of travel into and throughout its City Hall building.

3. The CITY OF WILLIAMSPORT has intentionally discriminated against Plaintiffs and acted with deliberate indifference to their rights under Section 504 and the ADA. The City has for many years known that a federally protected right is substantially likely to be violated and failed to act despite that knowledge. The City has made deliberate choices. The failures here are not the result of negligence, oversight, or bureaucratic inaction. The City's approach has been to delay, dodge, deflect and defer.

4. Plaintiffs Center for Independent Living of North Central Pennsylvania and the ADAPT, North Central Pennsylvania are advocacy organizations which, among other things, work on behalf of individuals with disabilities regarding mobility and access. Each advocate for their civil rights for full compliance with the ADA and Section 504 of the Rehabilitation Act of 1973. For years, each has sought non-discriminatory access to City Hall for the organizations, their constituents and the beneficiaries of their activities. Each organization itself has sustained harm as a result of the City's violation of the law. The individual Plaintiffs THOMAS GRIECO, TIMA CUMMINGS, JAY HARNER, MARIE PRINCE have personally been denied their civil rights to which they are entitled, are likely to continue to be so denied, and, additionally, have been and are deterred from seeking participation in the services, benefits and facilities of the City.

5. The main public entrance to City Hall is via sets of steps from the street which are of no use to people who use wheelchairs, mobility devices or have mobility disabilities. There is no ramp. The City knows that the entrance violates the federal accessibility laws. The

City has long had in hand architectural designs to remedy this violation, and the City established R/C Project #18-1693, for the work, including an "ADA Ramp," published bids for construction and received qualified proposals from contractors, pricing the ramp with available funds. However, the City refused to execute a construction contract and, instead, has knowingly chosen to maintain its illegal exclusion of people with disabilities from entry to City Hall.[1]  Construction cost is less than one-half of one percent, that is, 0.476%, of the City's current five-year capital budget.[2]

6. The discrimination does not end at the front door. City Hall is also unsafe for deaf and blind individuals. For many years, the City has known that it violates the ADA and Section 504 requirements inside City Hall. Eight months ago, the City conducted an accessibility review which included both documentation of violations and identification of necessary remedial actions, The City has deliberately chosen to maintain violations of the federal accessibility laws from top to bottom of City Hall.

7. The consequences of the City's non-compliance affect thousands of citizens of Williamsport, as well as visitors to the City, 17% of the civilian non-institutionalized

---

[1]  A dangerous, segregated and effectively inaccessible entry exists through a series of locked doors to the Police Department, through the area in which criminal arrestees and defendants are moved and processed by a seating area equipped with handcuffs.

[2] The five-year capital budget is $96,803,000.  *An Ordinance Adopting a Six Year Capital Projects Budget for the City of Williamsport for Fiscal Years Ending June 30, 2020 to June 30, 2025, Bill No. 1738-19, Session of 2019.* The City's "bid tabulation" for R/C Project #18-1693 shows bid from two qualified contractors for the ADA Access Ramp, one for $491,000 and one for $430,000; thus, an average of $460,500 = 0.475% of the Capital Budget.

population of Williamsport are disabled.[3]  Of the 4,667 total number of people with

disabilities in the City, 3,362 of the City's population have ambulatory difficulty.[4]

8.  From 2015 to 2017, CILNCP actively communicated to the CITY OF WILLIAMSPORT

through meetings with the Mayor regarding barriers encountered by people with

disabilities. Since July 3, 2017, Plaintiffs have met with the Williamsport Mayor and

attended City Council meetings to discuss architectural barriers at City Hall and their

continuing demand for an ADA compliant access solution. Plaintiffs' advocacy for access

continued through 2018, 2019 and 2020. City Hall remains inaccessible and non-

compliant. Individual and organizational Plaintiffs are denied access to the City's

services, programs and facilities.

9.  The City has failed to commit to, or to take, comprehensive systemic action on the issues

raised in this Complaint.

10. Efforts to resolve the matters addressed in this Complaint amicably have been

unsuccessful. Plaintiffs notified the City in writing on or about November 7, 2019 that

absent voluntary resolution, litigation would ensue (see Exhibit A). City Council

members on that date jn open session acknowledged that they maintained conditions at

City Hall regarding both access to the building and inside the building in violation of the

Americans with Disabilities Act. That was not the first time, the City confessed to its

---

[3]

https://data.census.gov/cedsci/all?q=disabilities%20williamsport%20pa&g=1600000US4285312
&hidePreview=false&tid=ACSST5Y2018.S1810&vintage=2018&layer=VT_2018_160_00_PY
_D1&cid=S1810_C01_001E=

[4]
https://data.census.gov/cedsci/table?q=disabilities%20williamsport%20pa&g=1600000US428353
12&hidePreview=false&tid=ACSSE2018.K201803&vintage=2018&layer=VT_2018_160_00_P
Y_D1&cid=S1810_C01_001E

knowing violation of the law. At that November 7, 2019 City Council Meeting. Plaintiff CILNCP, INC. personally advised the CITY OF WILLIAMSPORT CITY COUNCIL at that regular meeting of CITY COUNCIL that, unless compliance was achieved, litigation would be initiated. Regrettably, no resolution was reached.

11. Plaintiffs seek compensatory damages, injunctive and declaratory relief and an award of attorneys' fees.

12. A jury trial is demanded on compensatory damages.

## JURISDICTION

13. This is an action for declaratory and injunctive relief, and for damages, brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq., as amended*; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*

14. This Court has jurisdiction over claims arising under Title II and Section 504 pursuant to 28 U.S.C. sections 1331 and 1343.

15. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202.

## VENUE

16. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), because Defendant is located within this District and the events or omissions giving rise to the claims alleged herein occurred and are occurring in this District.

## PARTIES

17. Plaintiff CENTER FOR INDEPENDENT LIVING NORTH CENTRAL
    PENNSYLVANIA, incorporated as CILNCP, Inc.,[5] ("CILNCP") is a federally funded
    independent living center located in Williamsport, PA that serves persons with
    disabilities throughout the Commonwealth's Centre, Clinton, Lycoming, Montour,
    Northumberland, Snyder, Tioga, and Union counties. Founded in 1998, CILNCP is a
    non-profit organization that advocates and promotes independent living for all persons
    with disabilities, serving more than hundreds of consumers. CILNCP board members and
    staff include a majority of persons with disabilities. CILNCP's board members,
    constituents and staff are directly affected and harmed by Defendant's violations of law
    described in this Complaint. CILNCP is funded, in part, through the federal government's
    Administration on Community Living. "ACL's independent living programs work to
    support community living and independence for people with disabilities across the nation
    based on the belief that all people can live with dignity, make their own choices, and
    participate fully in society. These programs provide tools, resources, and supports for
    integrating people with disabilities fully into their communities to promote equal
    opportunities, self-determination, and respect." https://acl.gov/ils-programs

18. Plaintiff ADAPT, NORTH CENTRAL PENNSYLVANIA ("ADAPT") is the local
    chapter of a national grass-roots community that organizes disability rights activists to
    ensure the civil and human rights of people with disabilities to live in freedom. Access to

---

[5] As of October 1, 1998, CILNCP was granted independent status and was incorporated as
CILNCP, Inc. under the 501(c)(3) of the IRS Code.

City Hall, the hub and symbol of local government, is critical to North Central PA

ADAPT's mission because such access promotes freedom of movement and

independence for individuals with disabilities in both symbolic and practical ways. Also,

such access is essential to ADAPT members' full and non-discriminatory participation in

the services, programs and benefits provided to citizens and visitors in City Hall.

Members of North Central PA ADAPT are directly affected and harmed by the violations

of their civil rights described in this Complaint.

19. Plaintiff JAY HARNER lives in Williamsport, PA.

20. Plaintiff TIMA CUMMINGS lives in Williamsport, PA.

21. Plaintiff THOMAS GRIECO lives in Lock Haven, PA.

22. Plaintiff MARIE PRINCE lives in Jersey Shore, PA.

23. Each individual named Plaintiff is a person with disabilities with conditions that

substantially impair their major life activities,, including but not limited to the activities

of walking, navigating, seeing and/or hearing as defined in the ADA, as amended, and

Section 504 of the Rehabilitation Act.

24. Defendant CITY OF WILLIAMSPORT is the local governmental entity that owns and

operates its City Hall. The City of Williamsport is the county seat for Lycoming County.

At City Hall, Williamsport provides operates, manages, supervises, and regulates all

government services; all the City's activities are programs, services and facilities under

the federal accessibility laws. Presently, and at all times relevant to this Complaint,

Defendant has been a "public entity" within the meaning of Title II of the ADA and has

received federal financial assistance. The CITY OF WILLIAMSPORT receives, and has

received sufficient federal financial assistance to require it to comply with Section 504 of

the Rehabilitation Act of 1973 at all times relevant to this Complaint,

## FACTS

**I.    City of Williamsport**

25. The Williamsport is the cultural, financial, and commercial center of Central

Pennsylvania.

26. The City of Williamsport is the county seat for Lycoming County located in north central

Pennsylvania. As county seat, Williamsport has the county courthouse, county prison,

sheriff's office headquarters and federal courthouse all located in the downtown

neighborhood, as is Williamsport's City Hall. The city encompasses approximately nine

square miles and is home to approximately thirty thousand local residents.

27. The City of Williamsport was established and is governed by the provisions of the

Optional Third-Class City Charter Law under a "strong mayor" form of government. The

mayor is the chief executive and administrative official, and a city council, comprised

of seven members who are elected at large, constitute the legislative branch. The mayor is

primarily responsible for the proper administration of the city, creates the budget and

serves for a term of four years. City Council is primarily responsible for legislation

setting, approving and monitoring budgets, and approving contracts, with each member

serving a staggered term of four years.

28. The affairs of city government are administered at the discretion of the mayor, through

the fire and police departments, and the departments of administration, code enforcement,

recreation and parks, and community development. Department heads and the chiefs of

the fire and police departments are appointed by the mayor.

29. City Hall houses multiple City government departments such as finance, public works, fire, human resources, recreation, codes/permits, and police departments. City Council and the Mayor's Office are also located in City Hall.

30. Williamsport City Hall is located at 245 West 4th Street between Government Place and West Street in Williamsport, Pennsylvania.

31. The City has considered moving its government operations elsewhere, but it has not made a decision to do so.  July 18, 2017, after a needs assessment of all departments in City Hall, the City rejected a move.

32. Whether the City government moves or does not move from City Hall, in whole or in part, it must ensure compliance with applicable federal accessibility laws at the building (unless the building is demolished or sold to private entities not subject to those laws).

II.    **The City of Williamsport's Non-compliance with Federal Accessibility Laws**

33. The CITY OF WILLIAMSPORT has intentionally discriminated against Plaintiffs and acted with deliberate indifference to their civil rights under Section 504 and the ADA. The City has for many years known that a federally protected civil right is substantially likely to be violated, and failed to act despite that knowledge. The City has made deliberate choices. The failures here are not the result of negligence, oversight, or bureaucratic inaction.

34. In August 1990, the CITY OF WILLIAMSPORT conducted what it titled, "SECTION 504 SELF-EVALUATION for PROGRAM ACCESSIBILITY for the CITY OF WILLIAMSPORT AUGUST 1990." ("1990 Report"). The report's cover stated, "This report was prepared in accordance with the 24 CFR Part 8 and the Rehabilitation Act of 1973." The August 1990 Report was issued within no more than a few weeks after the

President's signing of the ADA on July 26, 1990. Therefore, the City did not have or
consider the regulatory mandates under the ADA which were later issued.

35. On information and belief, the CITY OF WILLIAMSPORT did not consider the ADA at
all in its 1990 Report; the ADA is not mentioned in the report at all.

36. The 1990 Report included "facilities operated by the City." At the time, the 1990 Report
asserted that the rear City Hall entrance which is the entrance to the Police Department for
Police and criminal arrestees/defendants was accessible. The 1990 Report found several
accessibility issues with the City Hall elevator. However, on information and belief, the
CITY OF WILLIAMSPORT did not consider the ADA at all in its 1990 Report; the ADA is
not mentioned in the report at all nor were any requirements or regulations yet proposed or
adopted.

37. On information and belief, the CITY OF WILLIAMSPORT has not conducted the Self-
Evaluation which the ADA expects public entities such as the CITY to conduct, nor has
the CITY prepared a ADA Transition Plan which the ADA expects public entities such as
the CITY to prepare and to implement.

38. On information and belief, it was not until 29 years later, in September-October 2019,
that the CITY OF WILLIAMSPORT conducted an "*Accessibility Review for City Hall*"
in its "City of Williamsport, City Hall ADA updates and overall building updates.""

39. The CITY knew before the 2019 City Hall accessibility review that the CITY as in non-
compliance with the ADA and Section 504.

40. On February 13, 2018, the CITY OF WILLIAMSPORT City Council acknowledged that
the CITY OF WILLIAMSPORT knew that City Hall is not accessible to people with

disabilities, and that the CITY OF WILLIAMSPORT is in violation of the ADA and its regulations.

41. On February 13, 2018, the CITY OF WILLIAMSPORT explained that the need to make City Hall accessible was a City priority.

42. On February 13, 2018, the CITY OF WILLIAMSPORT Chief Codes Officer, Joseph Girardi acknowledged, in the presence of the members of City Council, that City Hall is not accessible to people with disabilities, and that the CITY OF WILLIAMSPORT is in violation of the ADA and its regulations.

43. With regard to physical accessibility by a safely constructed integrated ramp, accessibility was discussed at the August 14, 2018 a meeting of City Council members, at which Councilman Don Noviello estimated that the ramp would be completed by October of 2018.  The architects at the time of the meeting had finished the ramp design. The Mayor of the CITY OF WILLIAMSPORT and City of Williamsport Councilman Noviello invited Plaintiff TIMA CUMMINGS to cut the inaugural ribbon at the anticipating groundbreaking.

44. The City agreed to construct an accessible ramp at the Fourth Street main entrance to City Hall and to make elevator upgrades for interior entry access. The project as bid out, R/C Project  #18-1693, titled "City Hall Ramp, Elevator Access Control Upgrades." The bid specifically identified as part of the project, "Add ADA Access Ramp."

45. Through the remainder of 2018 and through 2019, the CITY OF WILLIAMSPORT repeatedly delayed and deferred actions to comply with the ADA and Section 504 at City Hall.  Bids were received. The City's "bid tabulation" for R/C Project  #18-1693 shows bid from two contractors for the ADA Access Ramp, one for $491,000 and one for

$430,000.[6] City Council had before it on its Agenda for its September 26, 2019 meeting a resolution which was recommended for approval, titled "Resolution Authorizing the City of Williamsport to Award Contracts for City Hall Elevator & Access Ramp. Then City Council on October 10, 2019 tabled the Resolution action, thereby intentionally continuing its violation of the ADA and Section 504, and no further action has been taken on this element of non-compliance.

46. On information and belief, there has been no comprehensive systemic action taken by the City to properly identify all City Hall violations ADA and Section 504 violations, or to remediate the known violations of federal civil rights access laws already identified by the City.

47. There is no accessible entrance to City Hall for people with mobility disabilities who use wheelchairs or other mobility devices. ADA compliant systems and practices which provide safety for blind and deaf individuals at City Hall are not in place, including but not limited to life-and-safety critical fire alarm systems.

48. The discrimination does not end at the front door. City Hall is also unsafe for deaf and blind individuals and those with related challenges. For many years, the City has known that it violates the ADA and Section 504 requirements inside City Hall. Eight months ago, the City conducted an accessibility review which included both documentation of violations and identification of necessary remedial actions. In September and October 2019, the City conducted a formal detailed "*Accessibility Review for City Hall*" based on "City of Williamsport, City Hall updates and overall building updates," based on "[i]nformation gathered through studies, evaluations, pricing and estimates." The Mayor

---

[6] The *City's Capital Projects Budget for 2020 to 2025* is $96,*803,000.*

and Council personally received the review. The violations already documented by the

City include, for example,

**Basement 9/25/19**
>   No restrooms on this floor
>   Doors without accessible hardware
>   Fire extinguishers at wrong height or wrong location
>   Inadequate door clearances
>   Absent signage
>   No emergency lighting in restrooms

**First Floor 10/18/19**
>   Doors without accessible hardware
>   Fire extinguishers at wrong location
>   Inadequate door clearances
>   Absent signage
>   4 sets of light switches at wrong height
>   Restroom facilities non-compliant

**Second Floor 10/11/19**
>   Sechler Room: Not compliant
>
>   City Council Chamber: Not compliant including, for example, doors without
>   accessible hardware, three aisles with width too narrow for wheelchairs, no
>   designated space for wheelchair seating
>
>   Other:
>   Doors without accessible hardware
>   Fire extinguishers at wrong location
>   Inadequate door clearances
>   Absent signage
>   No emergency lighting in restrooms
>   Restrooms are not accessible

**Third Floor 10/7/19**
>   Doors without accessible hardware
>   Fire extinguishers at wrong location
>   Inadequate door clearances
>   Inadequate door clearances
>   Restrooms are not accessible

49. The City has deliberately chosen to maintain violations of the federal accessibility laws

from top to bottom of City Hall.

50. Efforts to resolve the matters addressed in this Complaint amicably have been unsuccessful. Plaintiffs notified the City in writing on or about November 7, 2019 that absent resolution, litigation would ensue. No resolution was reached.

### III.   The Organizational Plaintiffs

51. Plaintiff CILNCP has consumers with disabilities who reside in, work in, and/or regularly travel throughout Williamsport, including the City Hall building. The organization also has many staff members, board members, and volunteers who have disabilities.

52. CILNCP consumers, staff members, board members and volunteers have used, and will continue to use City Hall, but are impeded by the pervasive access violations of the ADA and Section 504.

53. The CITY OF WILLIAMSPORT's failure to comply with the law has caused CILNCP to dedicate staff time and organizational focus to evaluating and addressing barriers that limit safe access to its employees and consumers. For example, CILNCP has engaged in public advocacy with the City for many years on this issue through correspondence to and meetings with City officials, providing testimony at City Council meetings, and submitting requests for barrier remediation on behalf of CILNCP consumers.

54. As part of ADAPT, NORTH CENTRAL PENNSYLVANIA's disability rights activism has sought to engage City representatives in various capacities with the goal of securing greater safe accessibility to and throughout City Hall.  ADAPT has spent the past several years attempting to informally collaborate with the City to develop solutions to the critical condition of the safe access and participation guaranteed by the law.

IV.    **The Individual Plaintiffs**

55. Plaintiff THOMAS GRIECO lives in Lock Haven, PA. He is an artist with his studio in Williamsport, PA. About 17 years ago, at age 29, THOMAS GRIECO was paralyzed in an accident, is paraplegic, and paralyzed from the waist down. He is substantially impaired in the major life activities of walking, running and ambulating under the ADA. He uses a wheelchair for mobility and drives a motor vehicle with hand controls.

56. Before his accident, Plaintiff THOMAS GRIECO did not think twice about walking right into City Hall up the front steps into the building. He no longer has a safe accessible path of travel into City Hall.

57. Plaintiff THOMAS GRIECO's advocacy was initially prompted by concerns regarding inaccessible sidewalks in the City. Wheelchair users were forced to go round-about out of the way outdoors to reach destinations. GRIECO knows fellow wheelchair users who have been subject to serious danger when they are compelled to use the street instead of impassable sidewalks.

58. Plaintiff THOMAS GRIECO's involvement with CILNCP and ADAPT on the sidewalk issues led to meetings with officials at City Hall. He believed that City Hall, which he considered the heart of the City, would be accessible and safe for everyone, including people with disabilities, the elderly, people with babies and strollers. The safe access inadequacies caused him to feel that the City was trying to keep such people out.

59. Participation in CITY OF WILLIAMSPORT governmental discussions generally is important to Plaintiff GRIECO. The safe access inadequacies deter him from such participation.

60. Plaintiff GRIECO's experience, the area which leads to the ramp to the police department is not safely accessible for people who use wheelchairs and other mobility devices, with regard to incline, slope, parking and other characteristics.

61. Plaintiff JAY HARNER is also substantially impaired in the major life activities of walking, running and ambulating under the ADA. He uses a power wheelchair for mobility. has spoken at CITY OF WILIAMSPORT City Council meetings to advocate for recognition and protection of the rights of people with disabilities, and for compliance with the statutes and regulations at issue in this litigation.

62. The inaccessibility of City Hall extends to exits from the building. On November 5, 2019, JAY HARNER was not able to exit the building due to inaccessibility. The only "exit" provided by the CITY OF WILIAMSPORT is a dangerous one through the Bureau of Police. On that date, the double steel security doors, that must be opened by a member of the police department, were closed and locked. After more than five minutes of kicking and banging on the doors, shouting for help, the City Chief of Police, Daman Hagan, opened the doors to allow JAY HARNER to exit the building. On other occasions, Plaintiff HARNER has had to wait up to 20 minutes to enter or exit City Hall due to the absence of a police officer to lock and unlock the multiple doors. He was thus trapped between the locked doors, to the police department.

63. Arrestees and criminal defendants are brought into the Bureau of Police up the same ramp and through the same multiple sets of locked doors, and the foyer, as people with disabilities are compelled to go through in order to enter City Hall through the effectively inaccessible entrance which the CITY OF WILLIAMSPORT provides.

64. People with disabilities cannot enter City Hall without fear of contact with, or actual encounters with, individuals involved in the criminal process. The individual Plaintiffs and others with disabilities are deterred from entering City Hall, and from participating in and observing and utilizing their government, by this effectively inaccessible system established by the CITY OF WILLIAMSPORT.

65. The area which leads to the ramp to the police department is not safely accessible for people who use wheelchairs and other mobility devices, with regard to incline, slope, parking and other characteristics.. The sole handicap parking space is flanked by areas for active moving vehicular traffic. To reach the ramp at the police station requires exposure do moving vehicular traffic. The single handicap parking space compels the driver to go into trafficked space and, if the vehicle has a pullout ramp for the van's wheelchair, that ramp pulls or folds out into traffic because there are no markings to protect the space, and traffic is not directed to ensure driver and driver safety.

66. The inaccessible parking lot area poses the additional risk that a Plaintiff's wheelchair van's ramp which folds out at the side of an accessible van will be run over by a car. The risk is not speculative. For example, Plaintiff HARNER's fold out ramp was just a few seconds from being run over by the Mayor's car as the Mayor pulled in to park.

67. Plaintiff TIMA CUMMINGS lives in Williamsport, PA and works as a Direct Services Provider for people with disabilities. Has spina bifida and is paralyzed from the waist down. He is substantially impaired in the major life activities of walking, running and ambulating under the ADA. For mobility, uses a power wheelchair.

68. It is an extremely scary experience for TIMA CUMMINGS to come into City Hall for City Council meetings. The only way into or out of the building is through a perilous

system through the Bureau of Police. That route has put him in a narrow width, just a foot or two from individuals handcuffed by the police to a seat.  That this has happened puts him in fear of it happening, and there is no other route to get to City Council's Chamber. Plaintiff CUMMINGS feels that he is being denied the freedom of attending his City's government's meeting in a manner and with the dignity to which he is entitled.

69. Plaintiff TIMA CUMMINGS, together with other wheelchair users, has been discriminated against by the inaccessibility of CITY OF WILLIAMSPORT's maintenance of its inaccessible City Council Chamber.  There is no accessible seating location. People with wheelchairs are forced to sit outside the aisles blocking benches. The aisles are too narrow for wheelchairs.

70. Plaintiff TIMA CUMMINGS has spoken at City Council meetings, advocating for accessibility to be provided both at City Hall and in the City generally. He cannot speak on the same basis as individuals without mobility disabilities; the City Council guest podium is too high. To use the microphone, another person has to maneuver the microphone to a problematic angle, or he must move to sit with the administration facing the attendees, rather than speak facing the City administration with his comments and demands.

71. Plaintiff TIMA CUMMINGS sought to take a tour of City Hall but was unable to experience the full tour as some office could not be entered due to lack of wheelchair access.

72. Plaintiff JAY HARNER works for CILNCP as Employment Network Coordinator. His responsibilities include assisting clients with the Ticket to Work program, advising clients regarding employment-related benefits, resume-building, and other functions.

Plaintiff HARNER is and has been an advocate with CITY OF WILMINGTON officials regarding the necessity for safe access to and inside City Hall.

73. Plaintiff HARNER, a quadriplegic paralyzed from his chest down, broke neck when he was hit by a wave at a beach at age 18. He is substantially impaired in the major life activities of walking, running and ambulating under the ADA.

74. Plaintiff HARNER has actively participated in City Council meetings seeking without success to obtain serious positive responses to the disability community's insistence that safe access be provided to City Hall.

75. In Plaintiff HARNER's experience, he and other advocates are not taken seriously, and their requests are put off, and are delayed again and again without cause.

76. To reach the ramp at the police station requires exposure do moving vehicular traffic, as the single handicap parking space compels the driver to go into trafficked space and, if the vehicle has a pullout ramp for the van's wheelchair, that ramp pulls or folds out into traffic because there are no markings to protect the space, and traffic is not directed to ensure driver and driver safety.

77. Plaintiff MARIE PRINCE lives in Jersey Shore, NJ, and works full-time in Williamsport, PA with CILNCP as representative payee for consumer benefits.

78. Plaintiff MARIE PRINCE has been deaf since birth. She reads lips and can voice.  That she is deaf satisfies the statutory standard of substantial impairment in the major life activities of hearing, communication and speaking..

79. Plaintiff PRINCE has been involved in advocating for safe physical access to Williamsport City Hall and for ADA and Section 504 compliance inside the building.

80. Plaintiff PRINCE attended the City Council meeting in November 2019 and complained to those officials there were the fire alarm system failed to accommodate her needs as a deaf person. She noted, for example, that if a fire erupted out of her sight, the alarm sound would not alert her. Plaintiff PRINCE expressed her fears for her safety due to the absence of a protective system.

81. Defendant City of Williamsport has known for years that the fire alarm system has been dangerously inadequate for the deaf and hard of hearing.

82. The ADA and its implementing regulations specify standards for visual alarms, and there are standards through the related National Fire Protection Association requirements. Illumination, intensity, strobe and other requirements must be met for fire alarm systems. Fire safety systems also are required to meet requirements for height of pull levers. The CITY OF WILLIAMSPORT's September/October 2019 analysis of ADA non-compliance requiring remediation, while incomplete, noted a number of fire alarm deficiencies.

83. Defendant PRINCE fears to enter City Hall for further advocacy and to maintain contact with, and knowledge of, government deliberations and actions. She is deterred from entering the building, but she would do so if there was an adequate safe fire alarm system and related systems.

84. Each individual Plaintiff has been exposed to the CITY OF WILLIAMSPORT's violations of the ADA and Section 504 within any and all applicable statutes of limitations for purposes of damages under the law.

85. The actions of the CITY OF WILLIAMSPORT in violation of the ADA and Section 504 are the proximate cause of damages and harm to each individual Plaintiff, including both emotional and physical harm.

86. The actions of the CITY OF WILLIAMSPORT in violation of the ADA and Section 504 are the proximate cause of damages and harm to each individual Plaintiff, including interference with their ability to interact with and participate in their government, and to petition their government for redress of their grievances.

87. The actions of the CITY OF WILLIAMSPORT in violation of the ADA and Section 504 have deterred the individual Plaintiffs from accessing City Hall and its programs, services, benefits and facilities.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131, et seq., as amended)**

88. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

89. Title II of the ADA, 42 U.S.C. § 12132, as amended, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

90. Named individual Plaintiffs and consumers, staff, and board members of the organizational Plaintiffs, are qualified to participate in the City's services, programs, or activities and have disabilities within the meaning of the ADA.

91. A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).

92. Defendant the CITY OF WILLIAMSPORT is a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

93. During all times relevant to this complaint, the CITY OF WILLIAMSPORT has employed fifty or more persons.

94. Title II of the ADA requires public entities, including the CITY OF WILLIAMSPORT, to operate each of its programs, services, or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149 & 35.151.

95. The work of the CITY OF WILLIAMSPORT which it conducts at City Hall, and elsewhere, and is conducted by the City's employees and officials, constitute a vital program, service or activity under Title II of the ADA. 28 C.F.R. § 35.104.

96. Defendant CITY OF WILLIAMSPORT has failed to provide persons with impairments that affect mobility meaningful access to programs, services and activities, in violation of Title II of the ADA.

97. Defendant CITY OF WILLIAMSPORT has also failed to operate its programs, services and activities so that they are readily accessible to and usable by persons with impairments that affect mobility when viewed in its entirety, in violation Title II of the ADA.

98. The regulations implementing Title II of the ADA also require a public entity to maintain the features of all facilities required to be accessible under the ADA. 28 C.F.R. § 35.133. See 28 C.F.R. § 35.104.

99. As a direct and proximate result of the aforementioned acts, Plaintiffs have been and continue to be injured.

100.     The CITY OF WILLIAMSPORT has intentionally discriminated against Plaintiffs and acted with deliberate indifference to their rights under Section 504 and the ADA. The City has for many years known that a federally protected right is substantially likely to be violated, and failed to act despite that knowledge. The City has made deliberate choices. The failures here are not the result of negligence or bureaucratic inaction.

101.     The City's conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiffs are entitled to compensatory damages, declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794, *et seq*.)**

102.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

103.     Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

104.     Named individual Plaintiffs the board members, staff and consumers of the organizational Plaintiffs are qualified to participate in Defendant CITY OF WILLIAMSPORT's services, programs and activities, and have disabilities within the meaning of Section 504. *See* 29 U.S.C.§ 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 28 C.F.R. § 39.103.

105.     The CITY OF WILLIAMSPORT is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504 and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

106.     The CITY OF WILLIAMSPORT and its agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs, based solely by reason of their disabilities, to discrimination in the benefits and services of Defendant's program in Williamsport.

107.     As a direct and proximate cause of the aforementioned acts, Plaintiffs have been and continue to be injured.

108.     Defendant's conduct constitutes an ongoing and continuous violation of Section 504 and, as a result, Plaintiffs are entitled compensatory damages, declaratory and injunctive relief as well as reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows, including but not limited to:

109.      Declaratory judgment finding that Defendant's conduct as alleged herein has

violated and continues to violate Title II of the Americans with Disabilities Act and

Section 504 of the Rehabilitation Act.

110.      An order and judgment enjoining Defendant from violating Title II of the

Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and requiring

Defendant to develop and implement a remedial plan, subject to Court approval, to

remedy such failures in order to provide meaningful access to City Hall, consisting of

both a compliant access ramp, and actions within City Hall.

111.      Grant such temporary, preliminary and other relief as may be just, equitable and

proper.

112.      Order Defendant to pay Plaintiffs' attorneys' fees, expenses, and costs; and

113.      Such other and further relief as the Court deems just, equitable and proper.

Dated: July 15, 2020.  Williamsport, Pennsylvania

By:

/s David Ferleger                                    /s Thomas H. Earle
DAVID FERLEGER, ESQUIRE                THOMAS H. EARLE, ESQUIRE
413 Johnson Street                              112 N. 8th Street, Suite 600
Jenkintown, PA 19046                          Philadelphia, PA 19107
 (215) 887-01234                                (215) 620-3347
david@ferleger.com                             thomasearle@libertyresources.org
Pa. Atty ID # 15699                            Pa. Atty ID # 63859

*Attorneys for Plaintiffs*